**Reversed and Rendered and Opinion filed August 2, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00906-CV

## MEGADRILL SERVICES LIMITED; MD NIGERIA L.L.C.; DEPTHWIZE NIGERIA LIMITED; AND ROBERT P. DUNN, Appellants

### V.

## TOM BRIGHOUSE, Appellee

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2016-88243**

## O P I N I O N

Four nonresident defendants appeal the trial court's denial of their special appearances. In a single issue, the nonresident defendants assert that the trial court erred in exercising personal jurisdiction over them. Because the record shows that the nonresident defendants lack the requisite minimum contacts with Texas to warrant the exercise of personal jurisdiction as to this lawsuit, we reverse and render judgment dismissing the foreign plaintiff's claims.

**Background**

Tom Brighouse worked as a mechanic aboard the Monarch, an oil and gas rig operated by Depthwize Nigeria, Ltd. Brighouse alleges he was injured in September 2015 while working on the Monarch off the coast of the Republic of Nigeria. Seeking damages for his alleged injury, Brighouse, a New Zealand citizen, filed the present lawsuit in Harris County district court against these defendants (collectively, "appellants"):

- Megadrill Services Limited, a holding company formed under the laws of the British Virgin Islands, with no employees and no business operations in Texas;

- Depthwize, a Nigerian company that leases and operates oil and gas rigs offshore the Republic of Nigeria, with no offices or business operations in Texas;

- MD Nigeria L.L.C., a Louisiana company that provides services and support to Depthwize related to Depthwize's operation of leased rigs, with no offices or business operations in Texas; and

- Robert P. Dunn, a resident of Louisiana and director of Megadrill and MD Nigeria, with few Texas contacts.

Brighouse sued appellants for breach of contract, Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA") violations, fraud, negligent misrepresentation, negligence, unseaworthiness, and wrongful denial of maintenance and cure. In his live pleading, he alleged that he slipped and fell onboard the Monarch while performing his job duties because of the "unseaworthy condition" of the vessel—specifically, the lack of non-skid or non-slip surfaces on the walkways. He claimed that the Monarch had been refurbished in Louisiana and

2

Texas in preparation for work in Nigeria. Brighouse asserted that "[d]efendants were the owners, owners pro hac vice and/or operators of the Monarch and were responsible for its dangerous and unseaworthy conditions." According to Brighouse, he also "suffered contractual and extra-contractual damage due to Defendants' breach of its obligation to procure promised insurance benefits. . . ." Finally, Brighouse asserted that "Dunn has used the corporate veil of MegaDrill, MD Nigeria, and Depthwize as a sham. Indeed, there are actually no corporate boundaries or barriers between these entities, which share a common ownership, business address[], employees, contacts, structure, and purpose."

Appellants filed special appearances supported by affidavits. The principals of Megadrill, MD Nigeria, and Depthwize averred that the companies never: (1) had offices, mailing addresses, business operations, or bank accounts in Texas; (2) advertised in Texas; (3) paid taxes in Texas; (4) produced any products in Texas; (5) owned or controlled any real property in Texas; (6) leased or sold products in Texas; (7) entered into any contracts in Texas; (8) committed any torts in Texas; or (9) had been sued, outside of this litigation, in Texas. Similarly, Dunn averred that he: (1) was a resident of Louisiana, not Texas; (2) did not maintain a regular place of business in Texas; (3) never had an office in Texas; (4) was not licensed and did not perform any drilling contracting in Texas; (5) never advertised in Texas; (6) never recruited any Texas residents as employees; (7) never produced, leased, or sold any products in Texas; and (8) never committed any torts in Texas. Appellants argued that they lacked sufficient minimum contacts with Texas to establish personal jurisdiction under both general and specific jurisdictional analyses.

After completing jurisdictional discovery, Brighouse filed a single response to the special appearances. Brighouse asserted that Dunn and Megadrill invoked the Texas court system by filing a lawsuit in federal district court in Houston and using

3

a Harris County district court in attempting to collect on the judgment from that lawsuit. Brighouse contended that, because Dunn and Megadrill had "actively engag[ed]" in Texas courts, they waived their right to object to personal jurisdiction as to any litigation. Brighouse also asserted that his claims arose out of Megadrill's and MD Nigeria's forum-related conduct: the Monarch's negligent refurbishment—the failure to properly provide the rig with non-skid paint on the walkways—at a Galveston, Texas shipyard.[1] Brighouse further claimed that, for purposes of personal jurisdiction, Depthwize and MD Nigeria are the alter-egos of Megadrill.

After a hearing, the trial court signed an order denying the special appearances. The trial court thereafter signed findings of fact and conclusions of law. In its findings and conclusions, the trial court determined that: (1) Dunn and Megadrill waived their objections to personal jurisdiction by previously filing a lawsuit in United States District Court for the Southern District of Texas; (2) the court possessed specific jurisdiction over Megadrill and MD Nigeria based on their forum-related conduct; and (3) "Megadrill is so interrelated with Depthwize and MD Nigeria to impute jurisdiction to all three entities" under an alter-ego theory based on Megadrill's consent to jurisdiction.

This interlocutory appeal challenging the trial court's denial of the appellants' special appearances timely followed.[2]

---

[1] Brighouse did not assert any Texas contacts related to his contract, DTPA, fraud, or negligent misrepresentation claims.

[2] *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7).

**Standard of Review**

We review de novo a trial court's denial of a special appearance. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). When, as here, the trial court issues findings of fact and conclusions of law in connection with its ruling on the special appearance, an appellant may challenge the trial court's factual findings on legal and factual sufficiency grounds. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We review the challenged factual findings by applying the same standards used in reviewing jury findings. *Horowitz v. Berger*, 377 S.W.3d 115, 122 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

In a legal sufficiency review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding, crediting favorable evidence if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). We will set aside a finding on legal sufficiency grounds only if (a) there is a complete absence of a vital fact, (b) we are barred by legal or evidentiary rules from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* In reviewing for factual sufficiency, we consider all the evidence; we will set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* Finally, we review the trial court's legal conclusions de novo. *Id.*

**Principles of Personal Jurisdiction**

The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. Tex. Civ. Prac. &

Rem. Code § 17.042. The Supreme Court of Texas has interpreted the broad language of the Texas long-arm statute to extend Texas court's personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *M & F Worldwide*, 512 S.W.3d at 885. A plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the scope of the long-arm statute. *BMC Software*, 83 S.W.3d at 794-95. A defendant challenging a Texas court's personal jurisdiction must negate all jurisdictional bases alleged. *Id.*

A trial court may constitutionally exercise personal jurisdiction over a party when (1) the nonresident defendant has minimum contacts with the forum state and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 62 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *M & F Worldwide*, 512 S.W.3d at 886. "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A nonresident defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *Id.* General jurisdiction arises when a defendant's contacts with the forum state "'are so "continuous and systematic" as to render [it] essentially at home in the forum State.'" *M & F Worldwide*, 512 S.W.3d at 885 (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919

(2011)); *see also Daimer AG v. Bauman*, 571 U.S. 117, 138 (2014). General jurisdiction concerns a court's ability to exercise jurisdiction over a nonresident defendant as to any claim, including claims unrelated to the defendant's contacts with the forum. *Id.* The test for general jurisdiction "requires 'substantial activities within the forum' and is a "high bar," *Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 72 (Tex. 2016), presenting 'a more demanding minimum contacts analysis than for specific jurisdiction.'" *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (quoting *BMC Software*, 83 S.W.3d at 797). Even when a defendant's contacts may be continuous and systematic, they are insufficient to confer general jurisdiction if they fail to rise to the level of rendering a defendant "essentially at home in the forum [s]tate." *Old Republic Nat'l Title Ins. Co. v. Bell*, No. 17-0245, 2018 WL 2449360, at *3 (Tex. June 1, 2018).

In analyzing specific jurisdiction, on the other hand, we focus on the relationship among the defendant, the forum, and the particular litigation at hand. *See M & F Worldwide*, 512 S.W.3d at 886 (citing *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575-76 (Tex. 2007)). Specific jurisdiction is established when the plaintiff's cause of action arises from or relates to the defendant's alleged minimum contacts within the forum. *Id.* For specific jurisdiction purposes, a defendant's minimum contacts with a forum are established when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id*. (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). Three principles govern the purposeful-availment analysis: (1) "only the defendant's contacts with the forum" are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be "purposeful" and not "random, isolated, or fortuitous";

7

and (3) the defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" such that it impliedly consents to suit there. *Id*. "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id*.

Bearing the standard of review and these jurisdictional principles in mind, we turn to the sole issue in this case: whether the trial court erred in denying the appellants' special appearances.

### Personal Jurisdiction by Consent or Waiver

The personal jurisdiction requirement recognizes an individual liberty interest in that it protects a defendant against the burdens of litigating in a distant or inconvenient forum. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.10 (1982). Because the requirement of personal jurisdiction represents an individual right, it can, like other such rights, be waived. *Id.* at 703; *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("Unlike subject matter jurisdiction, which concerns a court's jurisdiction to hear a case and cannot be waived, personal jurisdiction concerns a court's jurisdiction over a particular party and can be waived." (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006))). A defendant may submit to the personal jurisdiction of a court otherwise lacking such jurisdiction over him in a variety of ways—for example, by a contractual forum selection clause or by stipulation. *See Ins. Corp. of Ir., Ltd.*, 456 U.S. at 703-04; *see also Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 415 & n.9 (Tex. App.—Houston [14th Dist.] 1997, no writ). To the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas. *Burger King Corp.*

8

*v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985); *see also CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd*., 222 S.W.3d 889, 894 (Tex. App.—Dallas 2007, pet. denied) (op. on reh'g).

Relying on the common law waiver doctrine, Brighouse argues "[b]ecause MegaDrill actively engaged the Courts in Harris County and at the same time objected to appearing in Harris County, MegaDrill has acted intentionally inconsistent with its jurisdictional defense." The trial court found that: (1) Megadrill and Dunn filed suit in the Southern District of Texas in cause number 4:12-cv-03643, *Dunn v. Admiralty Marine & Structural Engineering, Inc.*,[3] and "actively engaged" in litigation in that case; (2) the lawsuit involved conduct that occurred in the Republic of Singapore, rather than the State of Texas; (3) Megadrill's corporate representative, Michael Topham, and Dunn both testified in Houston during the trial; and (4) after obtaining a favorable judgment in that case, Megadrill and Dunn sought to enforce the judgment in Harris County's 215th District Court. Based on these facts, the trial court concluded that Megadrill and Dunn waived their right to object to personal jurisdiction on due process grounds in the present case because they "intentionally acted inconsistent[ly] with this right" by filing and actively engaging in litigation in Texas in an unrelated matter, thereby consenting to jurisdiction in Texas. Effectively, the trial court ruled that Megadrill and Dunn, by filing a lawsuit in Texas federal court on a dispute unrelated to the present one, consented to personal jurisdiction in all Texas courts for any litigation in perpetuity. We disagree.

Texas authority on this point is sparse, but we have located one case addressing Brighouse's argument. In *James v. Illinois Central Railroad Co.*, 965

---

[3] The record reflects that the defendants in this federal lawsuit were Texas residents.

S.W.2d 594 (Tex. App.—Houston [1st Dist.] 1998, no pet.), the First Court of Appeals rejected an injured switchman's claim that Illinois Central had consented to Texas jurisdiction under the Texas long-arm statute by defending other, unrelated lawsuits in Harris County. *Id*. at 599. The court further held that asserting personal jurisdiction over the railroad would offend concepts of fair play and substantial justice because of a lack of Texas interest in adjudicating the dispute. *Id*. at 600. Thus, our sister court rejected the notion that a foreign defendant waives its right object to personal jurisdiction, or consents to jurisdiction, in Texas by having defended other lawsuits in Texas. *See id.*

Abundant and sensible decisions in other jurisdictions reject the argument that a defendant's participation in a lawsuit constitutes consent to personal jurisdiction in that forum *ad infinitum. See, e.g.*, *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991) ("A party's consent to jurisdiction in one case, however, extends to that case alone. It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available."); *Bertolini-Mier v. Upper Valley Neurology Neurosurgery, P.C.*, No. 5:15-cv-35, 2016 WL 7174646, at *3 (D. Vt. Dec. 7, 2016) (defendant's filing of six lawsuits in Vermont courts did not amount to consent to personal jurisdiction in Vermont; prior lawsuits were not related to present case); *Funai Elec. Co. v. Personalized Media Commc'ns, LLC*, Civ. No. 15-558-RGA, 2016 WL 370708, at *2-3 (D. Del. Jan. 29, 2016) (defendant that filed two earlier patent suits in Delaware against unrelated defendants did not consent to jurisdiction in Delaware); *Fesniak v. Equifax Mortgage Servs. LLC*, No. 14-3728, 2015 WL 2412119, at *6 (D. N.J. May 21, 2015) ("Plaintiff cites no authority to support the theory that Credit Plus' participation in a prior lawsuit in this forum

10

concerning different claims with different parties constitutes consent to settle all future disputes in New Jersey."); *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 467 n.10 (D.N.J. 2015); *Olympia Steel Bldg. Sys. Corp. v. Gen. Steel Domestic Sales, LLC*, Civ. A. No. 06–1597, 2007 WL 1816281, at *3 (W.D. Pa. June 22, 2007) (general jurisdiction would not arise where defendant participated in litigation on entirely different claims with entirely different parties) (citing *Bowers v. NETI Techs., Inc.*, 690 F. Supp. 349, 356 (E.D. Pa. 1988); *Simplicity Inc. v. MTS Prods., Inc.*, Civ. No. 53008, 2006 WL 924993, at *7 (E.D. Pa. Apr. 6, 2006)); *Mallinckrodt v. Sonus Pharmaceuticals, Inc.*, 989 F. Supp. 265, 271 (D.D.C. 1998); *cf. also Ford Motor Co. v. Cejas*, No. 09-16-00280-CV, 2018 WL 1003791, at *4-5 (Tex. App.—Beaumont Feb. 22, 2018, no pet.) (noting that trial court "correctly rejected" similar waiver argument) (mem. op.). Brighouse, on the other hand, cites no authority supporting his position that a party's consent to jurisdiction in one case extends to other unrelated lawsuits in the same jurisdiction.

To be sure, some courts, including this court, have concluded that a defendant waives or consents to personal jurisdiction when that party previously sought affirmative relief in the forum's courts by filing and pursuing lawsuits there. *See Nawracaj v. Genesis Software Sys., Inc.*, 524 S.W.3d 746, 753-54 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see also General Contracting & Trading Co., LLC v. Interpole, Inc.*, 940 F.2d 20, 21 (1st Cir. 1991); *Int'l Transactions Ltd. v. Embotelladora Agral Regionmontana S.A. de C.V.*, 277 F. Supp. 2d 654 (N.D. Tex. 2002). But those courts found consent only when the affirmative lawsuit was based on the same transaction that was at issue in the subject litigation, or at least a related transaction. *See Nawaracaj*, 524 S.W.3d at 753-55; *see also Interpole*, 940 F.2d at 21; *Embotelladora*, 277 F. Supp. 2d at 667-69.

11

Here, the claims asserted by Megadrill and Dunn in Houston federal court are entirely unrelated to Brighouse's lawsuit. And Brighouse does not explain why Megadrill's and Dunn's prior federal court lawsuit or the subsequent Harris County action to enforce the federal court judgment—both of which are completely untethered to the present lawsuit—meet the common law definition of waiver on which he relies. The initiation of the federal court action and state court enforcement suit neither implies consent to be sued for all purposes in Texas, nor do they in and of themselves constitute sufficient continuous and systematic contacts sufficient to render Megadrill and Dunn essentially at home in this State. *See, e.g.*, *Daimler*, 571 U.S. at 138; *Parex Resources, Inc. v. ERG Resources, LLC*, 427 S.W.3d 407, 416-17, 431-33 (Tex. App.—Houston [14th Dist.] 2014), *aff'd sub nom. Searcy*, 496 S.W.3d 58.

We therefore hold as a matter of law that Megadrill and Dunn did not consent to personal jurisdiction in the present action by previously filing a federal court lawsuit in Texas on an unrelated matter. The present facts viewed most favorably to Brighouse do not support a conclusion that Dunn and Megadrill waived their right to object to personal jurisdiction or impliedly consented to general jurisdiction in Texas. *See, e.g.*, *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010) (explaining that a defendant can show that, even if the plaintiff's alleged jurisdictional facts are true, the evidence is legally insufficient to establish jurisdiction). Thus, the trial court erred in determining it had personal jurisdiction over these defendants on this basis.

12

## Specific Jurisdiction

A Texas court may exercise specific jurisdiction over a nonresident defendant when the plaintiff's cause of action arises from or relates to the defendant's contacts with Texas. *M & F Worldwide*, 512 S.W.3d at 888; *see also Moki Mac*, 221 S.W.3d at 585.

> In the present case, the trial court found as follows:
>
> In this case, Mr. Brighouse suffered personal injuries while located on Defendants' vessel, the Monarch. . . .
>
> Defendants refurbished the vessel at the Gulf Cooper Yard in Galveston, Texas for approximately forty-five days. . . .
>
> After the vessel was refurbished in Texas, Defendants commissioned the vessel to Nigeria, and ultimately, Mr. Brighouse suffered his injuries on the vessel due to its negligent condition.

Based on these facts, the trial court concluded that it had specific jurisdiction over Megadrill and MD Nigeria because they "refurbished the rig in Texas" and the alleged negligence originated in Texas.

Considering only these defendants' purposeful contacts with Texas as shown by the uncontroverted record evidence, we conclude that Brighouse's claims do not arise from or relate to the work performed in Texas. *See, e.g., Kelly*, 301 S.W.3d at 659 (explaining that defendant can establish lack of specific jurisdiction by, *inter alia*, showing that plaintiff's claims do not arise from contacts). Brighouse's slip and fall occurred on the Monarch's 4th level front deck, starboard side. No work was performed in this area of the Monarch while it was in Texas. Instead, while located in Galveston, the Monarch's hull was raised out of the water, blasted, and painted; a stairwell was added underneath the rig; and a mud processing platform was added to the stern of the rig. None of the decking work on the Monarch was performed in Texas. Indeed, Megadrill's principal, Michael Topham, stated

unequivocally in his affidavit, "No work was performed in Galveston on the deck area where Mr. Brighouse purportedly slipped and fell on September 11, 2015." Brighouse presented no controverting evidence.

Because the record conclusively shows that Brighouse's alleged slip and fall accident does not arise out of or relate to the refurbishment work performed in Texas, the trial court erred in concluding that it had specific jurisdiction over Megadrill and MD Nigeria. *See, e.g.*, *Old Republic*, 2018 WL 2449360, at *4-8 ("Furthermore, to satisfy the requirements of specific jurisdiction, the cause of action must arise from the defendant's purposeful contacts with Texas and such contacts must not be too attenuated."); *M&F Worldwide Corp.*, 512 S.W.3d at 889-90; *Searcy*, 496 S.W.3d at 70 ("Specific jurisdiction, in short, does not turn on where a plaintiff happens to be, and *does not exist where the defendant's contacts with the forum state are not substantially connected to the alleged operative facts of the case*." (emphasis added)); *Waller Marine, Inc. v. Magie*, 463 S.W.3d 614, 621-22 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (explaining that, because there was no substantial connection between defendants' purposeful contacts with Texas and cause of action alleging substandard services by co-defendant, trial court did not err in granting defendants' special appearance); *Meader v. IRA Res., Inc.*, 178 S.W.3d 338, 349 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("In this case, appellees' contacts with the forum are too random, fortuitous, or attenuated to support an assertion of specific jurisdiction.").

\* \* \*

For the foregoing reasons, the trial court lacked personal jurisdiction over Megadrill, Dunn, and MD Nigeria. Because Brighouse's alter ego or veil-piercing theories of jurisdiction against Depthwize rest on the propriety of jurisdiction over Megadrill or Dunn, these bases for jurisdiction are likewise negated. The trial court

erred in denying the appellants' special appearances, and we sustain their sole appellate issue.

## Conclusion

We reverse and render judgment dismissing Brighouse's claims against Megadrill, MD Nigeria, Depthwize, and Dunn for lack of personal jurisdiction.


/s/    Kevin Jewell
        Justice


Panel consists of Justices Busby, Brown, and Jewell.