**Reversed and Rendered and Memorandum Opinion filed May 26, 2022.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-21-00290-CV

## JOHNATHAN PAPPIE, RAJAGOPAL KEERTHY SUNDER, PEACOCK GLOBAL, LLC, AND VX GLOBAL, INC., Appellants

### V.

## GAGAN BATRA, CHARLIE SERENITA, LAWRENCE CHEN, YIMON FONG, AND PETER CHIU, Appellees

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 20-DCV-279511**

### MEMORANDUM OPINION

Four nonresident defendants appeal the trial court's denial of their special appearances. In four issues, the nonresident defendants assert the trial court erred in exercising personal jurisdiction over them. Because the record reflects the nonresident defendants lack the requisite minimum contacts with Texas to warrant personal jurisdiction and the forum selection clauses contained in the contracts are not enforceable, we reverse and render judgment dismissing the appellees' claims.

BACKGROUND

Appellees Gagan Batra, Charlie Serenita, Lawrence Chen[1], Yimon Fong, and Peter Chiu filed the present lawsuit in Fort Bend County District Court against:

- Rajagopal Keerthy Sunder, a physician and resident of California;

- Peacock Global, LLC, a California limited liability company established in California in 2020 for the purpose of engaging in the medical supply business;

- Jonathan Pappie, a Nevada resident; and

- VX Global, Inc., a Nevada corporation established in Nevada in 2021 to engage in the Personal Protective Equipment market.

Appellees sued appellants for breach of contract, violation of section 54.004 of the Business and Commerce Code, violation of section 134A.002 of the Civil Practice and Remedies Code, and violation of section 1836 of Title 18 of the United States Code. Appellees alleged they entered into non-disclosure/non-circumvention agreements with appellants for the purchase of 100 million boxes of nitrile gloves at a cost of $22.95 per box for a total purchase price of $2.295 billion. By the terms of the agreements, appellees Chen, Fong, and Chiu allege they were entitled to a commission on the sale. Appellees' claims are based on alleged violations of these agreements. The sale of nitrile gloves was never completed.

Appellees further alleged that Sunder, in violation of the non-disclosure/non-circumvention agreement, entered into a new non-disclosure/non-circumvention working agreement with Pappie. Appellees alleged the new agreement breached the prior agreement and served to deprive Batra, Serenita, and Chen of their commissions on the sale of the nitrile gloves. Appellees further alleged Sunder and

---

[1] Throughout the record Chen's name is occasionally spelled "Chan." We use the spelling of the party's name as it is spelled in the trial court's order.

Pappie entered into a third non-disclosure/non-circumvention agreement with regard to purchase of the gloves, which served to tortiously interfere with the original contracts entered into between appellants and appellees.

Appellants filed special appearances supported by affidavits. Sunder averred that (1) he was a resident of California; (2) never resided in Texas; (3) was a managing member of and controlled Peacock Global, LLC, which was formed in California in 2020 with California as its principal place of business; (4) neither he, nor a representative of Peacock Global, solicited the transaction described in appellees' petition in Texas; and (5) neither he, nor a representative of Peacock Global, entered into a contract, written or oral, in Texas. In describing the failed purchase, Sunder averred that he spoke with Guido Lazzerini and Steve Caravello who are located in Northern California. Those individuals connected Sunder with a prospective buyer located in Florida. Sunder averred that any communications he had with the parties were by telephone and email from his office in California. Sunder averred that Peacock Global did not have offices in Texas and that he never visited Texas in connection with the proposed transaction. Sunder attached the non-disclosure agreements, which he signed, and averred that nothing in the agreements fixed venue or jurisdiction in Texas.

Pappie averred that (1) he was a resident of Nevada and had never lived in Texas; (2) he was the sole owner of VX Global, Inc., which was incorporated in Nevada and had its principal place of business in Nevada; (3) neither he nor VX Global had advertised, marketed, or done business in Texas; (4) neither he, nor a representative of VX Global, solicited the transaction in Texas; and (5) neither he, nor a representative of VX Global, entered into any contract, written or oral, in Texas. Pappie attached copies of the non-disclosure agreements signed by him in connection with the proposed nitrile glove sale and averred that nothing in the

3

agreements fixed venue or jurisdiction. Pappie averred that he only communicated with Chen and Fong via email or telephone from Nevada. Chen and Fong were located in California at the time of the communications. The only prospective buyer of the nitrile gloves was Stone & Properties Group, LLC of Miami, Florida, a company that does not conduct business in Texas. Pappie averred that he had never physically been to Texas and maintained no business relationships, assets, or liabilities in Texas.

Appellees responded to appellants' special appearances asserting denial of the special appearances because (1) the special appearances did not comply with Texas Rule of Civil Procedure 120a because they were not verified; and (2) jurisdiction was controlled by forum selection clauses in the contracts at issue. Appellees alleged the following paragraph contained in the agreements signed by Sunder and Peacock Global permitted jurisdiction in any court "worldwide":

> The jurisdiction for this Agreement is global and worldwide. Should the Companies assert that a violation has occurred, the parties agree that the Companies shall be entitled to take action to remedy the violation in the locale and/or legal jurisdiction in which the violation occurred, and/or in any other locale or jurisdiction(s) which is appropriate, in the opinion of the Companies and their counsel.

Appellees further contended that all parties were bound by the following forum selection clause:

> This agreement is valid for any and all transactions between the Parties herein and shall be governed by the enforceable law in Canadian Courts, USA courts, English courts or under Swiss law in Zurich, in the event of dispute, the arbitration laws of states will apply. The signing parties hereby accept such selected jurisdictions as the exclusive venue.

Appellees subsequently amended their petition to include the above-referenced forum selection clauses. Although appellees filed multiple claims, each of them relates to the alleged breach of the non-disclosure/non-circumvention agreements.

4

After a non-evidentiary hearing, the trial court denied appellants' special appearances. The trial court did not issue findings of fact and conclusions of law. This interlocutory appeal challenging the denial of appellants' special appearances followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7).

ANALYSIS

Appellants list the following issues in their briefing: (1) appellants met their burden of proof and conclusively demonstrated that appellants lack significant contacts with the state of Texas; (2) the court cannot enforce the worldwide jurisdiction clause against appellant Sunder; (3) the worldwide jurisdiction clause is nothing more than an agreement to agree; and (4) there is no forum selection clause in the International Chamber of Commerce non-disclosure agreements. We first address appellees' claim that appellants' special appearances did not comply with Rule 120a because they were not verified. We next address appellants' issue asserting they met their burden with regard to minimum contacts. Lastly, we address issues two through four together as they address the enforceability of the forum selection clauses in the agreements.

I. **The lack of verifications on the special appearances is not fatal because the affidavits are sufficient.**

Texas Rule of Civil Procedure 120a provides that a special appearance may be made by a party for the purpose of objecting to the exercise of jurisdiction of the court over the person or property of the party and that "[s]uch special appearance shall be made by sworn motion filed prior to motion to transfer venue or any other plea, pleading or motion[.]" Tex. R. Civ. P. 120a(1). Appellants filed their special appearances before any other plea, pleading, or motion, asserting that Texas courts lack personal jurisdiction over them. Appellants did not verify their special appearances, but they supported each of the factual statements in the special

5

appearances with a citation to their attached affidavits that in turn averred to the facts contained in the special appearances.

Citing *Casino Magic Corp. v. King*, appellees argue that the trial court could have denied appellants' special appearances because appellants did not verify the special appearances. 43 S.W.3d 14, 18 (Tex. App.—Dallas 2001, pet. denied). In *Casino Magic Corp.*, the court held that the special appearance in that case was defective because it was unverified and contained several jurisdictional facts that the witness did not attest to in the attached affidavit. *Id.* In *Washington DC Party Shuttle, LLC v. IGuide Tours*, we found *Casino Magic Corp.* distinguishable where the affidavit attached to an unverified special appearance contained averments of each of the relevant jurisdictional facts stated in the special appearance. 406 S.W.3d 723, 730–31 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). As in *Washington DC Party Shuttle*, appellants' affidavits in this case attest to the relevant jurisdictional facts set forth in the special appearances. On appeal, appellees do not identify any jurisdictional fact stated in appellants' special appearances that is not repeated and sworn to by appellants in their affidavits. We therefore conclude that appellants' affidavits sufficiently verified the special appearances. *Id.* at 731.

Again citing *Casino Magic Corp.*, appellees also assert that appellants' affidavits are deficient because they do not state that the facts in the pleadings are true and correct but only state that the facts in the affidavits are true and correct. As we pointed out in *Washington DC Party Shuttle*, the affidavit in *Casino Magic Corp.* lacked certain jurisdictional facts. By contrast, appellants stated in their special appearances:

- Appellant Sunder was a resident of California;
- Appellant Peacock Global was a California limited liability company established in California in 2020;

6

- Appellant Pappie was a resident of Nevada;
- Appellant VX Global was a Nevada corporation established in Nevada in 2021;
- Appellants did not solicit the transaction in Texas, nor did they enter into any contract in Texas;
- None of the agreements at issue in this case were executed in Texas; and
- No portion of the failed transaction took place in Texas.

In their affidavits appellants attested to the truth of each of these facts. We therefore conclude that the affidavits sufficiently verified the special appearances. *See Washington DC Party Shuttle*, 406 S.W.3d at 731; *see also Munz v. Schreiber*, No. 14-17-00687-CV, 2019 WL 1768590, at *3–4 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op.) (lack of verification of special appearance held not fatal when affidavits stated jurisdictional facts).

For the first time on appeal, appellees assert that Pappie's affidavit, which was executed in Nevada, is defective because the "acknowledgement" does not comply with section 121.004 of the Civil Practice and Remedies Code. Formal defects in a special-appearance affidavit can be cured by amendment. *Dawson–Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). Appellees did not raise this issue in the trial court, which would have given Pappie an opportunity to cure the alleged defect. Appellees cannot raise this argument for the first time on appeal. *Grupo TMM, S.A.B. v. Perez*, 327 S.W.3d 357, 361 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). By failing to take the necessary action in the trial court, appellees waived their complaint about any alleged defect in Pappie's affidavit.

We turn to appellants' issues challenging whether the trial court erred in denying their special appearances.

7

## II.    Standard of Review

We review de novo a trial court's denial of a special appearance. *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017). When, as in today's case, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the trial court's ruling that are supported by evidence. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 8 (Tex. 2021); *Cont'l Alloys & Services (Delaware) LLC v. YangZhou Chengde Steel Pipe Co., Ltd.*, 597 S.W.3d 884, 891 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

## III.    Principles of Personal Jurisdiction

The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant who "does business" in the state. Tex. Civ. Prac. & Rem. Code § 17.042. The Supreme Court of Texas has interpreted the broad language of the Texas long-arm statute to extend Texas court's personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *M & F Worldwide*, 512 S.W.3d at 885. A plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the scope of the long-arm statute. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794–95 (Tex. 2002). A defendant challenging a Texas court's personal jurisdiction must negate all jurisdictional bases alleged. *Id*.

A trial court may constitutionally exercise personal jurisdiction over a party when (1) the nonresident defendant has minimum contacts with the forum state and (2) the assertion of jurisdiction complies with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Peters v. Top Gun Exec. Grp.*, 396 S.W.3d 57, 62 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Minimum contacts are sufficient for personal jurisdiction when the

nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *M & F Worldwide*, 512 S.W.3d at 886. "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A nonresident defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *Id*. General jurisdiction arises when a defendant's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *M & F Worldwide*, 512 S.W.3d at 885 (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)); *see also Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014). General jurisdiction concerns a court's ability to exercise jurisdiction over a nonresident defendant as to any claim, including claims unrelated to the defendant's contacts with the forum. *Id*. The test for general jurisdiction requires substantial activities within the forum and is a "high bar," *Searcy v. Parex Resources, Inc.*, 496 S.W.3d 58, 72 (Tex. 2016), presenting a more demanding minimum contacts analysis than for specific jurisdiction. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016). Even when a defendant's contacts may be continuous and systematic, they are insufficient to confer general jurisdiction if they fail to rise to the level of rendering a defendant "essentially at home in the forum [s]tate." *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 565 (Tex. 2018).

By contrast, courts may exercise specific jurisdiction when the defendant's forum contacts are "isolated or sporadic," as opposed to "continuous and

systematic," but only if the plaintiff's cause of action arises from or relates to those contacts. *TV Azteca*, 490 S.W.3d at 37 (quoting *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872–73 (Tex. 2010)). For specific jurisdiction purposes, a defendant's minimum contacts with a forum are established when the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009).

Three principles govern the purposeful-availment analysis: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the defendant's acts must be purposeful and not random, isolated, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction such that it impliedly consents to suit there. *Id*. The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *Id*.

In this case, appellees have not pleaded or alleged in response to the special appearance that appellants had continuous or systematic contacts with Texas sufficient to subject them to general jurisdiction. *See Washington DC Party Shuttle*, 406 S.W.3d at 738 (In determining the bases asserted for personal jurisdiction over a defendant, we consider the plaintiff's pleadings as well as the plaintiff's response to the special appearance). Thus, we address whether appellants had sufficient minimum contacts for the assertion of specific jurisdiction.

## IV. The asserted contacts are insufficient to establish specific jurisdiction.

In appellants' first issue they assert they met their burden to conclusively demonstrate that they lack significant contacts with Texas. When personal jurisdiction is challenged, the plaintiff and the nonresident defendant bear shifting

burdens of proof. *Bell*, 549 S.W.3d at 559; *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the scope of Texas's long-arm statute. *Bell*, 549 S.W.3d at 559; *Kelly*, 301 S.W.3d at 658. The trial court may consider the plaintiff's original pleadings as well as the response to the defendant's special appearance in determining whether the plaintiff satisfied the initial burden. *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Here, appellees asserted specific jurisdiction alleging appellants did business in Texas by contracting with a Texas resident to perform the contract in whole or in part in Texas. Contracting with a Texas resident is by itself insufficient to subject a nonresident defendant to jurisdiction in Texas. *Star Motors, LLC v. Motorwerks Vehicle Sales LLC*, No. 14-18-00763-CV, 2019 WL 2385755, at *4 (Tex. App.—Houston [14th Dist.] June 6, 2019, pet. denied) (mem. op.); *Colwell Realty Invs., Inc. v. Triple T Inns of Ariz., Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986). There must also be evidence that the contract was to be performed in whole or in part in Texas. *See* Tex. Civ. Prac. & Rem. Code § 17.042(1).

The court should examine the contract and examine the factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether the nonresident defendant purposefully established minimum contacts with the forum. *Experimental Aircraft Ass'n, Inc. v. Doctor*, 76 S.W.3d 496, 508 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

In addition to their breach of contract claims, appellees asserted statutory claims for misappropriation of trade secrets. *See* 18 U.S.C. 1836; Tex. Bus. & Com. Code § 54.001; Tex. Civ. Prac. & Rem. Code § 134A.002. Generally, a specific-

jurisdiction analysis should be performed on a claim-by-claim basis. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When separate claims are based on the same forum contacts, however, a separate analysis of each claim is not required. *Id.* at 150–51; *Waller Marine, Inc. v. Magie*, 463 S.W.3d 614, 620 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

With these concepts in mind, we address the contacts of each of the defendants in turn.

### A. Sunder and Peacock Global

Sunder signed a non-disclosure and non-circumvention agreement on November 19, 2020. Appellees assert that Sunder was authorized to obligate Peacock Global by signing this agreement. While Peacock Global does not appear to be bound by the agreement, we address both parties' contacts together. This agreement listed as its purpose to "engage in discussions regarding present and/or potential future business relationships." In the agreement, the "Confidant," Sunder, agreed not to:

> directly or indirectly, contact, deal with or otherwise become involved with any entity or any other entities or parties introduced, directly or indirectly, by or through the other party, its officers, directors, agents or associates, for the purpose of avoiding the payment to the Party(s) of profits, fees or otherwise, without the specific written approval of the Party(s).

The agreement further provided:

> No party has an obligation under this Agreement to purchase any service or item from any of the other parties, or to offer any service or item for sale to any of the other parties and that any agreement to have a business relationship between the parties will exist only when such agreement is in writing and duly executed by all the parties hereto.

The agreement was signed by Sunder, Batra, Serenita, and Chen, all parties to the underlying action. The agreement was also signed by Gary Langer, II, Lydia

12

Elfenbein, Steve Caravello, Guido Lazzerini, and Peter Vivant. Batra was the only signatory who listed an address in Texas. All signatures were performed electronically.

Appellees assert that in signing this agreement, Sunder "contracted with a Texas resident" and that the "contract was to be performed in part in Texas, along with the rest of the world." Appellees alleged Sunder breached the agreement by submitting a purchase order on November 20, 2020, for the nitrile gloves to VX Global and Pappie. The purchase order listed Peacock Global as the buyer and was signed by Sunder. Peacock Global's address was in California. The purchase order was directed toward VX Global, a Nevada company. The gloves were scheduled to be delivered to Los Angeles, California. Batra, the only Texas resident who signed the non-disclosure/non-circumvention agreement, allegedly introduced Sunder to Pappie and the potential sellers of the gloves. Appellees allege they had no further contact with appellants after November 23, 2020.

Appellees established a contract with a Texas resident in that Batra signed the agreement, but when we review the factors regarding performance of the contract, the record does not establish that the contract was to be performed in whole or in part in Texas. We first examine the parties' prior negotiations. The record reflects this was the first agreement between the parties and they had no prior negotiations. The second factor is the anticipated future consequences of the agreement. Here, the record reflects the anticipated future consequences were that the parties would enter into an exclusive arrangement to purchase nitrile gloves. The record reflects that no part of the anticipated purchase was to be performed in Texas—the gloves were to be purchased by a Florida company and delivered to Los Angeles. The terms of the contract required confidentiality and exclusivity among the parties in purchasing the gloves. Finally, we are to consider the parties' actual course of dealing. The record

reflects that the parties attempted to broker a sale of the gloves but that the sale was never completed. Considering the appropriate factors, we conclude there is no evidence that the November 19, 2020 non-disclosure agreement was intended to be performed in whole or in part in Texas.

Even a sustained contractual relationship with a Texas resident does not support the exercise of jurisdiction if the contract is centered around the nonresident's operations outside Texas. *Baywater Drilling, LLC v. Ratliff*, No. 01-19-00706-CV, 2020 WL 3422207, at \*6 (Tex. App.—Houston [1st Dist.] June 23, 2020, no pet.) (mem. op.). Here, the record shows the hub of the contract was centered on maintaining an exclusive relationship between brokers for the sale of nitrile gloves. Appellees presented no evidence that Sunder performed any of his contractual duties in Texas. Performance by Batra of his contractual duties in Texas does not constitute purposeful contacts by Sunder in Texas. *See Turner Schilling, L.L.P. v. Gaunce Mgmt., Inc.*, 247 S.W.3d 447, 456 (Tex. App.—Dallas 2008, no pet.) (concluding that other party's performance of contractual duties in Texas does not constitute purposeful contact by defendant in Texas); *see also Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) (determining that contracting with resident of forum state, combined with contract performance by resident party in forum state, did not establish minimum contacts when non-resident defendant did not perform any of its own contractual obligations in forum state, contract did not require performance there, and purpose or "hub" of contract was centered in Russia). Because the record establishes that Sunder's alleged breach of the agreement did not arise out of a contract to be performed in Texas, the trial court erred in concluding that Sunder and Peacock Global established minimum contacts with Texas.

14

## B.     Pappie and VX Global

Appellees alleged in their pleadings that Pappie averred in his affidavit that VX Global is the alter ego of Pappie. We will address the contacts of Pappie and VX Global together. Pappie, a Nevada resident, signed two non-disclosure agreements in connection with the potential sale of the nitrile gloves. Pappie only communicated with Chen and Yimon Fong, both located in California. Pappie signed two International Chamber of Commerce non-circumvention, non-disclosure and working agreements on November 23, 2020 and December 2, 2020 (the ICC agreements). Similar to the agreement signed by Sunder, the agreements obligated the parties to avoid interference with, or circumvention of each other's interests with "producers, Sellers, buyers, brokers, dealers, distributors, refiners, shippers, financial institutions, technology owners, or manufacturers, to change, increase or avoid directly or indirectly payment of established fees, commissions, or continuance of pre-established relationship or intervene in any relationship, etc." Similar to Sunder's agreement, all signatures were electronic. No Texas resident signed the ICC agreements.

In appellees' pleadings in the trial court, they asserted jurisdiction over Pappie and VX Global alleging they entered into a contract to be performed in whole or in part in Texas.

As with Sunder's agreement, we conclude the ICC agreements signed by Pappie were not performable in whole or in part in Texas. There is no evidence of prior negotiations between the parties. The contemplated future consequences were that the parties would maintain an exclusive relationship for the purchase of nitrile gloves. As with Sunder and Peacock Global the parties' actual course of dealing was that the sale was never completed.

The record shows the hub of the contract was centered on maintaining an

15

exclusive relationship between brokers for the sale of nitrile gloves. Pappie, a resident of Nevada, did not communicate with anyone in Texas, limiting his communications to Chen and Fong who lived in California. The record does not reflect that VX Global, a Nevada corporation, had any dealings in Texas. Appellees presented no evidence that Pappie performed or failed to perform any of his contractual duties in Texas. Because the record establishes that Pappie's alleged breach of the agreement did not arise out of a contract to be performed in Texas, the trial court erred in concluding that Pappie and VX Global established minimum contacts with Texas. *See Baywater Drilling, LLC*, 2020 WL 3422207, at \*6 (contract does not support exercise of jurisdiction if the contract is centered around the nonresident's operations outside Texas).

We sustain appellants' first issue.

## V. The forum selection clauses do not support jurisdiction in Texas.

In appellants' second and third issues they assert the trial court erred in enforcing the "worldwide jurisdiction" clause against Sunder and Peacock Global.

The personal jurisdiction requirement recognizes an individual liberty interest in that it protects a defendant against the burdens of litigating in a distant or inconvenient forum. *See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.10 (1982). Because the requirement of personal jurisdiction represents an individual right, it can, like other such rights, be waived. *Id*. at 703; *Trenz v. Peter Paul Petroleum Co.*, 388 S.W.3d 796, 800 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 379 (Tex. 2006)). A defendant may submit to the personal jurisdiction of a court otherwise lacking such jurisdiction over him in a variety of ways—for example, by a contractual forum selection clause. *See Ins. Corp. of Ir., Ltd.*, 456 U.S. at 703-04; *see also Conner v. ContiCarriers & Terminals, Inc.*, 944 S.W.2d 405, 415 & n.9

16

(Tex. App.—Houston [14th Dist.] 1997, no writ). To the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985); *Megadrill Services Ltd. v. Brighouse*, 556 S.W.3d 490, 496–97 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

## A. Sunder and Peacock Global

Appellees assert that Sunder and Peacock Global are subject to the jurisdiction of Texas because the contract signed by Sunder contained a "worldwide jurisdiction" clause. The agreement contained the following clause:

> The jurisdiction for this Agreement is global and worldwide. Should the Companies assert that a violation has occurred, the parties agree that the Companies shall be entitled to take action to remedy the violation in the locale and/or legal jurisdiction in which the violation occurred, and/or in any other locale or jurisdiction(s) which is appropriate, in the opinion of the Companies and their counsel.

Appellees assert that absent evidence of fraud or overreaching, they may enforce this forum selection clause and hail appellants into any court across the globe.

Contractual forum-selection clauses allow contracting parties to "preselect the jurisdiction for dispute resolution." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex. 2017). Under federal and Texas law, forum-selection clauses are prima facie valid. *See M/S Bremen v. Zapata Off–Shore Co.* ("*The Bremen*"), 407 U.S. 1, 9 (1972); *In re AIU Ins. Co.*, 148 S.W.3d 109, 114 (Tex. 2004) (discussing and adopting reasoning of *The Bremen*); *Deep Water Slender Wells, Ltd. v. Shell Intern. Expl. & Prod., Inc.*, 234 S.W.3d 679, 693 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (applying standards from *The Bremen* in dispute involving forum-selection clause). The party seeking to enforce a contractual forum-selection

17

provision has the initial burden of establishing that the parties entered into an agreement to an *exclusive* forum and that the agreement applies to the claims involved. *See Phoenix Network Techs. (Europe) Ltd. v. Neon Sys.*, 177 S.W.3d 605, 611–12 & n.6 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (emphasis added) (noting that the threshold matter of showing that the parties agreed on an exclusive forum was consistent with *The Bremen* test announced by the Supreme Court).

Assuming the party seeking enforcement establishes these prerequisites, the burden shifts to the party opposing enforcement to make a "strong showing" overcoming the prima facie validity of the forum-selection clause. *Id*. at 611 (quoting *The Bremen*, 407 U.S. at 10). Under this framework, a forum-selection clause must be enforced unless "the party opposing enforcement of the clause can clearly show that (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial." *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 231–32 (Tex. 2008).

An enforceable forum selection clause must contain explicit language regarding exclusivity. *Mabon Ltd. v. Afri-Carib Enterprises, Inc.*, 29 S.W.3d 291, 297 (Tex. App.—Houston [14th Dist.] 2000, no pet.), *abrogated on other grounds by In re AIU Ins. Co.*, 148 S.W.3d at 111–14. Only after the parties establish exclusivity of the clause does the burden shift to the party resisting jurisdiction to show fraud or overreaching. *Id.*

While the clause in this case indicates "the Companies shall be entitled to take action to remedy the violation in the locale and/or legal jurisdiction in which the violation occurred, and/or in any other locale or jurisdiction(s) which is appropriate, in the opinion of the Companies and their counsel," the language is permissive in

18

nature. Although the word "shall" is a mandatory term, in this context it simply means that the parties may bring suit in a locale or jurisdiction in which the violation occurred, or any other jurisdiction; it does not provide for *exclusive* jurisdiction. *See, e.g., John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs., Inc.*, 22 F.3d 51, 53 (2d Cir. 1994) (holding that clause providing that "[a]ny dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts" was not exclusive); *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987) (holding that clause stating that "[t]he courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or the interpretation of this contract" did not provide for exclusive jurisdiction); *Mabon Ltd.*, 29 S.W.3d at 297–98 (holding that clause stating that "because of the multi-state and multi-country jurisdiction involved due to the locations of the principals, banks and depositories, etc., the laws of the Federal Government of Nigeria will apply and the Federal District of Nigeria shall have venue" did not provide for exclusive venue in Nigeria).

Given the lack of any explicit language in the agreement providing for exclusive jurisdiction in Texas, we conclude the parties did not contractually consent to submit to exclusive jurisdiction in Texas. *See Mabon Ltd.*, 29 S.W.3d at 297. We sustain appellants' second and third issues.

## B. Pappie and VX Global

In appellants' fourth issue they assert there is no forum selection clause in the ICC agreements. Appellees similarly rely on a clause in the ICC agreements to hail Pappie and VX Global into a Texas court. Because Sunder also signed the ICC agreements, appellees contend that all parties are subject to personal jurisdiction in Texas under the following clause:

This agreement is valid for any and all transactions between the Parties

19

herein and shall be governed by the enforceable law in Canadian Courts, USA courts, English courts or under Swiss law in Zurich, in the event of dispute, the arbitration laws of states will apply. The signing parties hereby accept such selected jurisdictions as the exclusive venue.

Appellants argue the above clause provides, at best, that arbitration is required in the event of a dispute. Assuming without deciding that the above clause can be considered a forum selection clause for litigation, it fails for lack of exclusivity as did the "worldwide" jurisdiction clause in the agreement signed by Sunder. *See Mabon Ltd.*, 29 S.W.3d at 297–98 (stating exclusivity requirement for forum selection clause).

Given the lack of any explicit language in the ICC agreements providing for exclusive jurisdiction in Texas, for the reasons stated above, we conclude the parties did not contractually consent to submit to exclusive jurisdiction in Texas. We sustain appellants' fourth issue.

## CONCLUSION

We reverse and render judgment dismissing appellees' claims against appellants for lack of personal jurisdiction.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Jewell, Zimmerer, and Hassan.

20