2025 Tex. Bus. 5



The Business Court of Texas,
1st Division

| | | |
|---|---|---|
| PRIMEXX ENERGY OPPORTUNITY FUND, LP and PRIMEXX ENERGY OPPORTUNITY FUND II, LP, *Plaintiffs*, <br><br> v. <br><br> PRIMEXX ENERGY CORPORATION, M. CHRISTOPHER DOYLE, ANGELO ACCONCIA, BLACKSTONE HOLDINGS III LP, BLACKSTONE EMA II LLC, BMA VII LLC, BLACKSTONE ENERGY MANAGEMENT ASSOCIATES II LLC, BLACKSTONE ENERGY PARTNERS II LP, BLACKSTONE MANAGEMENT ASSOCIATES VII LLC, BLACKSTONE CAPITAL PARTNERS VII LP, BCP VII/BEP II HOLDINGS MANAGER LLS, BX PRIMEXX TOPCO LLC, and BPP HOLDCO LLC, *Defendants* | § § § § § § § § § § § § § § § § § § § § § § | Cause No. 24-BC01B-0010 |

[¶ 1] Before the court are special appearances by Blackstone Holdings III LP, Blackstone EMA II LLC, BMA VII LLC, Blackstone Energy Management Associates II LLC, Blackstone Energy Partners II LP, Blackstone Management Associates VII LLC, Blackstone Capital Partners VII LP, BCP VII/BEP II Holdings Manager LLC, and BX Primexx Topco LLC (Blackstone Defendants).[1]  Having considered the parties' arguments, pleadings, special appearances, submissions, and relevant law, the court signed an Order on January 17, 2025, denying the Blackstone Defendants' special appearances. This opinion follows.[2]

[¶ 2] The dispositive issue is whether filing an answer in an earlier iteration of the dispute in one court consents to personal jurisdiction to litigate

---

[1] Each Blackstone Defendant is alleged to be a "direct subsidiary" of Blackstone, Inc. 10/25/24 Plaintiffs' Original Petition (Pet.) ¶ 17.  Defendant BPP HoldCo LLC did not join its fellow affiliates in filing a special appearance and is excluded from the definition of "Blackstone Defendants."

[2] The court entered its Order denying Blackstone Defendants' special appearances on January 17, 2025.  On January 24, 2025, Plaintiffs filed a First Amended Petition.  The thrust of Plaintiffs' amendment to its pleading was to add Blackstone, Inc. as a defendant. Because the court's Order was based on the Original Petition, this Memorandum Opinion and Order addresses Plaintiffs' Original Petition.

the same dispute in a later-filed suit in a different court in the same state. The court concludes that it does because the focus is on the defendants' consent to litigate the dispute in the state—not a particular court within the state.

## I. Background

[¶ 3] This case arises from a private equity investment in a limited partnership. Plaintiffs assert direct and indirect liability claims against Defendants for breaching statutory and contract duties in forcing a sale of the partnership's business to a third party. The court discusses only those facts relevant to the Blackstone Defendants' special appearances.

### A. Plaintiffs' Original Petition

[¶ 4] Primexx Resource Development, LLC (PRD) was an energy company operating in the Delaware Basin.[3] "Blackstone"[4] is alleged to have acquired a majority interest in PRD through Defendant BPP HoldCo LLC by investing in a partnership called Primexx Energy Partners, Ltd. (PEP).[5] A

---

[3] Pet. ¶ 1.

[4] Plaintiffs' Original Petition inconsistently refers to "Blackstone" to mean either (i) every defendant that is alleged to be a subsidiary of Blackstone (see Pet. ¶s 1 fn.1, 37) or (ii) just Defendant BPP HoldCo LLC (Pet. ¶ 27). In most instances, it appears that Plaintiffs intend "Blackstone" to refer to every Blackstone, Inc.-affiliated defendant.

[5] Pet. ¶s 1, 38.

Third Amended and Restated Limited Partnership Agreement (TAPA) governs investments in PEP.[6]

[¶ 5] Plaintiffs are Primexx Energy Opportunity Fund LP (PEOF I) and Primexx Energy Opportunity Fund II (PEOF II).  PEOFs were PEP limited partners.[7]

[¶ 6] Beginning in June 2021, Callon Petroleum Company made "a series of lowball offers to purchase Primexx."[8]  PEOFs claim that the Callon offer "almost exclusively benefitted [Blackstone] while destroying the value for all other investors (including [PEOF]s)."[9]

[¶ 7] Despite the above, Blackstone announced the sale Friday, July 30, 2021.[10]  Blackstone demanded that the board approve the sale by Monday, August 2, 2021.[11]  The sale closed on October 1, 2021.[12]  PEOFs thereafter

---

[6] Pet. ¶s 1, 38.

[7] Pet. ¶s 38, 51.

[8] Pet. ¶ 2.

[9] Pet. ¶ 3.

[10] Pet. ¶ 3.

[11] Pet. ¶ 3.

[12] Pet. ¶ 80.

sued Defendants, claiming they breached their contract and statutory duties to act in good faith and with loyalty and due care.[13]

## B. Procedural History

### 1. First Action

[¶ 8] PEOFs originally sued in Dallas County District Court on December 12, 2022 (First Action).[14] As discussed in part below, PEOFs argue that the instant case is effectively the same dispute as the First Action. The First Action included every Blackstone Defendant.

[¶ 9] Blackstone Defendants filed answers in the First Action without filing special appearances.[15] They also moved to dismiss the First Action based on a TAPA forum-selection clause.[16] The court granted that motion and dismissed the First Action on March 29, 2023.[17]

---

[13] Pet. ¶ 4.

[14] Pet. ¶ 5 (citing *Primexx Energy Opp. Fund, LP et al. v. Primexx Energy Corp. et al.*, No. DC-22-17122 (District Court of Dallas County, Texas, 298th Judicial District)).

[15] Plaintiffs' Opposition to Blackstone Defendants' Special Appearances (Opp. to Blackstone SA) Exhibit 2.

[16] Pet. ¶ 5; Pet. Exhibit 2.

[17] Pet. ¶ 6; Pet. Exhibit 3.

### 2. Second Action

[¶ 10] PEOFs re-filed in the United States District Court for the Northern District of Texas on May 4, 2023 (Second Action).[18] PEOFs added Blackstone Inc. executive Angelo Acconcia as a defendant, but otherwise the parties remained the same.[19] That court later dismissed the case *sua sponte* for lack of subject matter jurisdiction.[20]

### 3. Third Action

[¶ 11] PEOFs again sued in Dallas County on July 31, 2023 (Third Action).[21,22] Angelo Acconcia and the Blackstone Defendants filed special appearances.[23]

[¶ 12] Nonspecially appearing defendants filed an unopposed motion to transfer from the 68th Judicial District to the 298th Judicial District.[24] They

---

[18] Pet. ¶ 7 (citing *Primexx Energy Opp. Fund, LP et al. v. Primexx Energy Corp. et al.*, No. 3:23-cv-00985-K (N.D. Tex. 2023)).

[19] Pet. ¶ 7.

[20] Pet. ¶s 8–9; Pet. Exhibits 4, 5.

[21] Pet. ¶ 10 (citing *Primexx Energy Opp. Fund, LP et al. v. Primexx Energy Corp. et al.*, DC-23-10916 (District Court of Dallas County, Texas, 68th Judicial District)).

[22] PEOFs' petition states that it filed again in the 298th Judicial District, but this is contradicted by Opp. to Blackstone SA Exhibit 3 (Motion to Transfer from the 68th to 298th Judicial District Court of Dallas County).

[23] Pet. ¶ 10.

[24] Opp. to Blackstone SA Exhibit 3.

stated that "[PEOF]s filed the instant action, alleging the same claims against the same parties arising out of the same transaction as the First Action that the 298th District Court previously dismissed … (while also adding one additional defendant, Angelo Acconcia)."[25]  "Indeed, many of the allegations in the instant action are word-for-word verbatim [] in the First Action."[26]

[¶ 13] The case apparently was later transferred to the 298th District Court.[27]

[¶ 14] PEOFs filed a Notice of Removal to the First Business Court Division.[28]  All defendants consented to the removal.[29]  This court ordered the parties to submit briefing regarding what effect, if any, Section 8 of Acts 2023, 88th Leg., ch. 380 (H.B. 19) had on the removal of the Third Action.[30]  The parties agreed to dismiss the removed action without prejudice and the case was dismissed on October 18, 2024.[31]

---

[25] Opp. to Blackstone SA Exhibit 3 at 2.

[26] Opp. to Blackstone SA Exhibit 3 at 2.

[27] *See* Pet. Exhibit 6 at 5 (Plaintiffs' Notice of Removal to the Business Court).

[28] Pet. ¶ 11 (citing Pet. Exhibit 6).

[29] Pet. ¶ 11.

[30] Pet. ¶ 11.

[31] Pet. ¶ 11.

### 4. Instant Action

[¶ 15] PEOFs filed the instant suit on October 25, 2024. This Original Petition is substantially identical to the petition in the Third Action that the parties previously tried to remove here, which the nonspecially appearing defendants had in turn stated "alleg[ed] the same claims against the same parties arising out of the same transaction as the First Action."[32] Accordingly, the active pleading here asserts the same causes of action arising out of the same transaction as the First Action against the same Blackstone Defendants.

## C. Jurisdictional Fact Allegations

[¶ 16] PEOFs' petition alleges generally as to all "Defendants":

This Court has personal jurisdiction over all Defendants because they consented to personal jurisdiction in Dallas, Texas in the Third Amended and Restated Limited Partnership Agreement, which established Dallas as the principal place of business for the partnership. All Defendants continuously and systematically did business in the State of Texas, have purposefully availed themselves of the privilege of conducting activities inside the State of Texas, and invoked the benefits and protections of the laws of the State of Texas.[33]

---

[32] See 24-BC01B-0004, APPX_0001–0036 to 9/27/24 Notice of Removal to Business Court; Opp. to Blackstone SA Exhibit 3 at 2.

[33] Pet. ¶ 31.

[¶ 17] None of the Blackstone Defendants are alleged to be Texas residents.[34] Instead, PEOFs allege that "[a]ll of the Blackstone entities named as Defendants are direct subsidiaries of Blackstone Inc., a corporation with citizenship in New York … and Delaware."[35] Based on the corporate structure shown below, PEOFs allege that "every Blackstone entity named here is, at a minimum, a citizen of New York and Delaware":

---

[34] Pet. ¶s 17–26.

[35] Pet. ¶ 17.



[¶ 18] Based on the above diagram, PEOFs allege that "Blackstone used a combination of subsidiaries to manage BPP HoldCo LLC," which was a limited partner in the same partnership as PEOFs.[36]

[¶ 19] In opposing the Blackstone Defendants' special appearances, PEOFs identify specific allegations against each specially appearing Defendant.[37] PEOFs' allegations distill to two groups: (i) those against Blackstone Energy Partners II LP and Blackstone Capital Partners VII LP as "Blackstone Investors," and (ii) those against all other Blackstone Defendants.

[¶ 20] PEOFs allege that (i) the TAPA referenced Blackstone Investors by name and stated that capital for the agreement would come from them and (ii) a noncompetition provision in the TAPA specifically refers to the Blackstone Investors.[38] However, neither one is alleged to be a party to the TAPA.

[¶ 21] PEOFs allege the remaining Blackstone Defendants each (i) received millions of Callon shares in consideration for the Callon sale; (ii) is in

---

[36] Pet. ¶s 40–41.

[37] Opp. to Blackstone SA at 6–10.

[38] Opp. to Blackstone SA at 7–8.

the corporate chain above BPP HoldCo LLC, which signed the TAPA; and (iii) is listed on SEC filings in connection with the sale.[39]   None of these Defendants are alleged to be a party to the TAPA.

### D. Parties' Arguments

[¶ 22] Defendants argue that PEOFs failed to allege sufficient, particularized jurisdictional facts supporting specific personal jurisdiction over any of the Blackstone Defendants (general jurisdiction was not asserted).[40]   Defendants further argue that even assessed together, PEOFs' generalized allegations do not support specific jurisdiction over any specially appearing Defendant because PEOFs make no assertion that they performed any acts in Texas.[41]   Defendants further argue that the few specific allegations concerning the Blackstone Investors and the remaining Blackstone Defendants listed above are not substantively connected to the challenged asset sale.[42]

---

[39] Opp. to Blackstone SA at 7–10.

[40] Defendants' Verified Special Appearances (Blackstone SA) at 7.

[41] Blackstone SA at 7–8.

[42] Blackstone SA at 9–10.

[¶ 23] PEOFs respond that the Blackstone Defendants conducted substantial business in Texas in that they (i) had direct involvement in the investment in PRD, a Texas oil company, and the sale of those Texas oil assets at issue; (ii) either invested millions of dollars into PRD/PEP or received millions of shares from the Callon sale; (iii) are all in the same direct chain of entities that manage BPP HoldCo LLC, a PEP limited partner; and (iv) were involved in the TAPA and investment in PRD/PEP and its governance.[43]

[¶ 24] PEOFs further argue that regardless of their forum contacts, the Blackstone Defendants either (i) are estopped from arguing that the TAPA's forum-selection clause does not apply to them because they sought and received affirmative relief in the First Action by arguing the same or (ii) waived their right to object to personal jurisdiction by making a general appearance in the First Action.[44] Alternatively, PEOFs seek a continuance to conduct jurisdictional discovery, which they say Defendants avoided.[45]

---

[43] Opp. to Blackstone SA at 4–5, 7–10.

[44] Opp. to Blackstone SA at 16–20.

[45] Opp. to Blackstone SA at 28–29.

[¶ 25] Defendants reply that PEOFs have not shown that any Blackstone Defendants were involved in the Callon sale.[46] Defendants further argue that the TAPA was created five years before the Callon sale and lacks connection to the asserted claims.[47] Defendants argue they are not estopped because they have consistently argued PEOFs were signatories to the TAPA and bound by the forum-selection clause when bringing claims under the TAPA.[48]

[¶ 26] Regarding waiver, Defendants rely on *James v. Illinois Cent. R.R. Co.*, 965 S.W.2d 594 (Tex. App.—Houston [1st Dist.] 1998, no pet.) and *Megadrill Services Ltd. v. Brighouse*, 556 S.W.3d 490 (Tex. App.—Houston [14th Dist.] 2018, no pet.) for the premise that a defendant does not consent to jurisdiction merely by defending prior suits in Texas.[49]

[¶ 27] At the November 21, 2024, hearing, Defendants referred to a third case, *Grynberg v. M-I L.L.C.*, 398 S.W.3d 864 (Tex. App.—Corpus Christi

---

[46] Defendants' Omnibus Reply in Support of Special Appearances (Reply ISO Blackstone SA) at 2.

[47] Reply ISO Blackstone SA at 2.

[48] Reply ISO Blackstone SA at 4–5.

[49] Reply ISO Blackstone SA at 5–7.

2012, pet. denied), for the point that appearing in matters "ancillary" and prior to the main suit does not waive a personal jurisdiction challenge.[50]

[¶ 28] The court concludes that the Blackstone Defendants consented to Texas' jurisdiction in this action (*i.e.*, waived their right to object to personal jurisdiction).

## II. Applicable Law

### A. Special Appearances

[¶ 29] Texas Rule of Civil Procedure 120a governs special appearances. It provides:

> a special appearance may be made by any party either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of this State.

TEX. R. CIV. P. 120a(1).

[¶ 30] A special appearance may be made as to "an entire proceeding" or any severable claim involved therein. *Id.* Every appearance, prior to judgment, not in compliance with this rule is a general appearance. *Id.*

---

[50] 11/21/24 Hr. Trs. at 123:20–124:5.

[¶ 31] A party availing itself of Rule 120a must strictly comply with its terms because failure to do so results in waiver. *PetroSaudi Oil Servs. Ltd. v. Hartley*, 617 S.W.3d 116, 136 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

[¶ 32] Thus, a party waives its special appearance when it (i) invokes the court's judgment on any question other than the court's jurisdiction; (ii) recognizes by its acts that an action is properly pending; or (iii) seeks affirmative action from the court. *Exito Elecs. Co. v. Trejo*, 142 S.W.3d 302, 304 (Tex. 2004) (per curiam) (citing *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998)). But a party does not waive its jurisdictional challenge by seeking affirmative relief consistent with the special appearance. *Nationwide Distrib. Servs., Inc. v. Jones*, 496 S.W.3d 221, 225 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

## B. *In Personam* Jurisdiction

[¶ 33] A nonresident defendant is subject to personal jurisdiction in Texas if (i) the Texas long-arm statute authorizes the exercise of jurisdiction and (ii) the exercise of jurisdiction does not violate federal or state constitutional due process guarantees. *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010).

[¶ 34] The Texas long-arm statute's broad "doing business" language allows the trial court's jurisdiction to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007) (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991)).

[¶ 35] Therefore, courts need "only analyze whether [the defendant]'s acts would bring [the defendant] within Texas' jurisdiction consistent with constitutional due process requirements." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009).

[¶ 36] A state's exercise of jurisdiction comports with federal due process if (i) the nonresident defendant has "minimum contacts" with the state and (ii) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co., Inc.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 (2014)).

### 1.    Minimum Contacts

[¶ 37] A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the

forum state, thus invoking the benefits and protections of its laws." *Retamco*, 278 S.W.3d at 338.

[¶ 38] Courts consider three issues in determining whether a defendant purposefully availed itself of the privilege of conducting activities in Texas:

> First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Thus, sellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities. Finally, the defendant must seek some benefit, advantage or profit by availing itself of the jurisdiction.

*Id.* at 339 (quoting *Moki Mac*, 221 S.W.3d at 575); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005).

[¶ 39] The minimum-contacts analysis focuses on the "quality and nature of the defendant's contacts," not quantity. *Retamco*, 278 S.W.3d at 339.

[¶ 40] "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Id.* at 338 (quoting *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002)).

### a.    Specific Personal Jurisdiction

[¶ 41] Specific jurisdiction requires that "(1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities." *Retamco*, 278 S.W.3d at 338 (buying Texas real estate) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).   "The 'arise from or relate to' requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum." *Moki Mac*, 221 S.W.3d at 579; *Guardian Royal*, 815 S.W.2d at 228 (specific jurisdiction focuses on "the relationship among the defendant, the forum and the litigation").

[¶ 42] For a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, "there must be a substantial connection between those contacts and the operative facts of the litigation." *Moki Mac*, 221 S.W.3d at 585.  The "operative facts" of a litigation are those that "will be the focus of the trial" and "will consume most if not all of the litigation's attention." *Id.* at 585.

[¶ 43] Specific jurisdiction requires courts to analyze jurisdictional contacts on a claim-by-claim basis.  *Moncrief Oil Int'l Inc. v. OAO Gazprom*,

414 S.W.3d 142, 150 (Tex. 2013); *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006) ("If a defendant does not have enough contacts to justify the exercise of general jurisdiction, the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts."). But a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contact. *Moncrief*, 414 S.W.3d at 150–51.

## 2. Fair Play and Substantial Justice

[¶ 44] If the minimum contacts requirements are met, it is "rare" for exercising personal jurisdiction to not comply with fair play and substantial justice. *Retamco*, 278 S.W.3d at 341. Nonetheless, courts still consider factors to ensure that exercising jurisdiction does not offend traditional notions of fair play and substantial justice:

> (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* (citing *Burger King*, 471 U.S. at 477–78).

### 3.    The Parties' Burdens

[¶ 45] The plaintiff "bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute." *Kelly*, 301 S.W.3d at 658.   If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute the defendant need only prove that it does not live in Texas to negate jurisdiction. *Id.* at 658–59.   "Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff." *Id.* at 658.

[¶ 46] "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Id.*  Defendant can negate jurisdiction on either a factual or legal basis. *Id.* at 659.

[¶ 47] Factually, a defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.*  The plaintiff must then respond with its own evidence that affirms its allegations or else risk dismissal. *Id.*   However, the court considers "additional evidence," including, "stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes,

and any oral testimony," only to the extent it supports or undermines the pleadings' allegations. *Id.* at 658 n.4 (citing TEX. R. CIV. P. 120a(3)). If the plaintiff's evidence is not within the scope of the pleadings' factual allegations, the plaintiff should amend the pleadings for consistency. *Id.* at 659 n.6.

[¶ 48] Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction either (i) because the defendant's contacts with Texas fall short of purposeful availment (including that the claims do not arise from the contacts) or (ii) that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.* at 659.

## III. Discussion

### A. Blackstone Defendants' General Appearance

[¶ 49] To begin, "personal jurisdiction is a 'waivable right' and [a defendant] may give 'express or implied consent to the personal jurisdiction of the court.'" *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.—Dallas 2010, no pet.) (quoting *Burger King Corp.*, 471 U.S. at 473 n.14). "To the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process

even in the absence of contacts with Texas." *Id.*; *Megadrill*, 556 S.W.3d at 497.

[¶ 50] Here, Blackstone Defendants made general appearances in the First Action by seeking affirmative action from the court and filing an answer without filing special appearances. *Exito Elecs.*, 142 S.W.3d at 304; TEX. R. CIV. P. 120a(1) ("Every appearance, prior to judgment, not in compliance with this rule is a general appearance.").

[¶ 51] First, each Blackstone Defendant moved to dismiss the First Action, seeking affirmative relief from the court and invoking its judgment regarding the TAPA's forum-selection clause.[51] That motion was granted, and the First Action was dismissed. Second, the Blackstone Defendants filed an answer in the First Action not subject to any jurisdictional challenge.[52]

[¶ 52] During the November 21, 2024, hearing, their counsel argued for the first time that PEOFs' petition in the First Action—through a drafting error or otherwise—failed to actually articulate any claims against the Blackstone Defendants.[53]

---

[51] Opp. to Blackstone SA Exhibit 1.

[52] Opp. to Blackstone SA Exhibit 2.

[53] 11/21/24 Hr. Trs. At 122:11–123:11 (pointing out that the Petition in the First Action asserted claims against "Blackstone," which was defined as meaning only "BPP HoldCo").

[¶ 53] Regardless, it is quintessential that "by filing [an] answer, unconditioned by a special appearance" a defendant "acknowledge[s] that the case [i]s properly pending before *a Texas court.*" *Massachusetts Bay Ins. Co. v. Adkins*, 615 S.W.3d 580, 600 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (emphasis original); *Exito Elecs.*, 142 S.W.3d at 304. Blackstone Defendants' last-minute attempt to find fault in PEOFs' petition does not erase the fact that they answered in the First Action, thereby entering a general appearance and waiving any objection to personal jurisdiction. *PetroSaudi*, 617 S.W.3d at 136; *Nationwide Distribution Servs.*, 496 S.W.3d at 224.

[¶ 54] Therefore, Blackstone Defendants waived their right to object to personal jurisdiction in the First Action and consented to litigate these claims in at least the 298th District Court of Dallas County, Texas.

## B. Blackstone Defendants' Consent to Litigate these Claims in Texas

[¶ 55] Because a special appearance may be made as to "an entire proceeding" or otherwise is waived, TEX. R. CIV. P. 120a(1), one way to phrase

---

The Court notes that in Defendants' reply, they argued a contradictory position. *See* Reply ISO Blackstone SA at 4 ("In DC-22-17122, PEOF asserted claims under the LPA against both signatories and nonsignatories (*the Attenuated Blackstone Defendants among them*)." (emphasis added)).

the issue is whether Blackstone Defendants made a general appearance in only the First Action, or if the "entire proceeding" includes the present suit.

[¶ 56] According to Blackstone Defendants, the First Action "was a different cause number, different case, different court" and therefore effectively a different proceeding with respect to Rule 120a.[54] They further argue that finding that they consented to personal jurisdiction in this case based on participation in a prior, separate lawsuit would "expand the doctrine[] of … waiver to novel lengths."[55]

### 1.    Applicable Law

[¶ 57] Several courts in Texas hold that "[v]oluntarily filing a lawsuit in a jurisdiction is a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the lawsuits arise from the same general transaction." *Primera Vista S.P.R. de R.L. v. Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin*, 974 S.W.2d 918, 926 (Tex. App.—El Paso 1998, no pet.); *see also Int'l Transactions, Ltd. v. Embotelladora Agral Regionmontana SA de CV*, 277 F.

---

[54] 11/21/25 Hr. Trs. At 119:19–123:19.

[55] Reply ISO Blackstone SA at 2, 5–7.

Supp. 2d 654, 667 (N.D. Tex. 2002); *Zamarron v. Shinko Wire Co., Ltd.*, 125 S.W.3d 132, 143 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). Those cases trace to *General Contracting & Trading Co. v. Interpole*, 940 F.2d 20 (1st. Cir. 1991).

[¶ 58] In *Interpole*, General Contracting & Trading Co. (GCT) sued Interpole, Inc. in New Hampshire's federal district court seeking damages associated with the delayed delivery of GTC's order (Suit No. 1). *Id.* at 21. Interpole filed a third-party complaint for indemnity against Transamerican Steamship Corporation (Trastco), to which Trastco failed to respond, leading to a default against Trastco in Suit No. 1. *Id.* Trastco then brought a separate suit against Interpole in the same federal district court, charging fraud and misrepresentation regarding the same overall transaction (Suit No. 2). *Id.* Trastco subsequently challenged the default judgment in Suit No. 1 by claiming the court never had personal jurisdiction over it. *Id.* at 22.

[¶ 59] However, the First Circuit held that a "defendant may manifest consent to a court's *in personam* jurisdiction in any number of ways" and that "a party's consent to a court's jurisdiction may take place prior to the suit's institution … at the time suit is brought …, or after suit has started." *Id.* So, by bringing Suit No. 2, Trastco submitted itself to the district court's

jurisdiction in Suit No. 1 because "Trastco surrendered any jurisdictional objections to claims that Interpole wished to assert against it in consequence of the same transaction or arising out of the *same nucleus of operative facts*." *Id.* at 23 (emphasis added).

[¶ 60] The court reasoned "a ruling that Trastco did not submit to the court's jurisdiction in Suit No. 1 when it instituted Suit No. 2 would produce an unjust asymmetry, allowing a party (here, Trastco) to enjoy the full benefits of access to a state's courts *qua* plaintiff, while nonetheless retaining immunity from the courts' authority *qua* defendant in respect to claims asserted by the very party it was suing (here, Interpole)." *Id.*; *see also id.* at 24 ("There is no conceivable unfairness here. The choice to sue in New Hampshire, or to abstain, was Trastco's.").

[¶ 61] Thus, *Interpole* is (and its Texas progeny are) like the present case because Blackstone Defendants voluntarily appeared and chose to litigate claims arising from the Callon transaction here.

[¶ 62] Further, as discussed next, *Massachusetts Bay Ins. Co. v. Adkins* negates Defendants' "different cause number, different case, different court" argument. 615 S.W.3d at 598.

## 2. *Massachusetts Bay*

[¶ 63] *Massachusetts Bay* involved an underlying asbestos-related personal injury lawsuit filed in 1995 in Jefferson County, Texas and a transfer in 2017 to the 11th District Court of Harris County for pretrial matters (the MDL court). 615 S.W.3d at 584. Massachusetts Bay Insurance Company appealed the MDL court's order denying its special appearance. *Id.* The MDL court did in part because Massachusetts Bay waived its special appearance in the underlying litigation. *Id.*

[¶ 64] Specifically, on August 3, 2017, plaintiffs filed their forty-first amended petition in the Jefferson County trial court. *Id.* at 590.

[¶ 65] On October 10, 2017, a fellow defendant filed a notice of transfer in the Jefferson County court stating that the case had been transferred to the MDL court. *Id.* at 591.

[¶ 66] The next day, Massachusetts Bay filed an answer in the Jefferson County case without objecting to personal jurisdiction. *Id.* at 592. Massachusetts Bay later filed a special appearance in the MDL court on June 20, 2018. *Id.*

[¶ 67] Plaintiffs argued that Massachusetts Bay waived personal jurisdiction in the MDL case by earlier filing an answer in the Jefferson County

court that did not object to personal jurisdiction. *Id.* at 594. Massachusetts Bay responded that (i) its June 2018 special appearance was the first pleading that it filed in the MDL court, (ii) it was "a new proceeding with a new cause number," (iii) and its previous answer was effectively a nullity because the Jefferson County court lacked jurisdiction over the suit as of October 10, 2017. *Id.* at 594–95, 598.

[¶ 68] To begin, the *Massachusetts Bay* court disagreed that the Jefferson County court was completely deprived of jurisdiction upon transfer to the MDL court, and therefore Massachusetts Bay's answer was not a nullity. *Id.* at 598 (discussing TEX. R. JUD. ADMIN. 13.5(b) & 13.11(f)(2)).

[¶ 69] Moreover, the court disagreed that the proceeding under a separate cause number in the MDL court was a "new" proceeding for Rule 120a. *Id.* at 599 ("Rather than its being a separate proceeding, we conclude that the proceeding in the MDL court in Harris County was simply a continuation of the proceeding in Jefferson County, albeit in a different court in a different county.").

[¶ 70] Additionally, the court held that the "purpose of a special appearance [] is to contest the ability of all courts in the forum state—not a particular district court—to exercise personal jurisdiction over a defendant."

*Id.* at 599–600 (citing *Minucci v. Sogevalor, S.A.*, 14 S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2000, no pet.)).

[¶ 71] Further, Rule 120a(1) states that a special appearance may be made "for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process *issued by the courts of this State*," not only that particular court of the State. *Id.* at 600 (quoting TEX. R. CIV. P. 102a(1) (emphasis original to opinion)).

[¶ 72] Thus, "[w]hat is relevant is that, by filing its answer, unconditioned by a special appearance, Massachusetts Bay acknowledged that the case was properly pending before *a Texas court*." *Id.* (emphasis original).

[¶ 73] Likewise, the Blackstone Defendants acknowledged that *these claims* were proper as to *these defendants* in a Texas court when they answered in the First Action without first filing special appearances.

### 3. Same Proceeding

[¶ 74] This action is essentially "a continuation of the proceeding" of the First Action. *See* 615 S.W.3d at 599.

[¶ 75] That is, the plaintiffs are the same, the defendants are the same (with the sole addition of Mr. Acconcia), and Blackstone Defendants' co-

defendants previously stated that the Third Action "alleg[ed] the same claims against the same parties arising out of the same transaction as the First Action" and that "[i]ndeed, many of the allegations in the [Third Action] are word-for-word verbatim of the allegations in the First Action."[56]

[¶ 76] And the instant action is substantially identical to the petition in the Third Action that parties previously tried to remove to this court. But for the cause number and the particular court, this action is essentially the same action as the first one filed on December 12, 2022, in the 298th Judicial District Court for Dallas County in which Blackstone Defendants made a general appearance.

[¶ 77] Accordingly, the Blackstone Defendants' general appearance in the First Action waived their right to object to personal jurisdiction here.

### 4. The Blackstone Defendants' Cases

[¶ 78] Blackstone Defendants cited cases "reject[ing] the notion that a foreign defendant waives its right [to] object to personal jurisdiction, or consents to jurisdiction, in Texas by having defended other lawsuits in Texas." *Megadrill*, 556 S.W.3d at 498. But those cases are factually distinguishable.

---

[56] Opp. to Blackstone SA Exhibit 3.

### *James v. Illinois Central*

[¶ 79] *James v. Illinois Central*, held that "consent, as a basis for obtaining personal jurisdiction over a foreign corporation, has been abandoned," citing the Supreme Court's decision *McGee v. Int'l Life. Ins. Co.*, 355 U.S. 220, 222 (1957). 965 S.W.2d at 599. The court therefore reasoned that "[r]egardless of its involvement in other litigation, a court's exercise of personal jurisdiction … depends upon minimum contacts analysis and considerations of fair play and substantial justice." *Id.* at 599–600.

[¶ 80] However, the court's holding is contrary to the Supreme Court's more recent decision in *Burger King* and a long line of Texas cases, including those the Blackstone Defendants cited, holding that "[t]o the extent a party has consented to jurisdiction in a particular forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with Texas." *See, e.g.*, *Megadrill*, 556 S.W.3d at 497 (citing *Burger King*, 471 U.S. at 473 n.14).

[¶ 81] Finally, the *James* court never said the previous lawsuits there were similar or related to the suit for which waiver was alleged, merely referring to "other lawsuits in Texas." 965 S.W.2d at 599, n.2.

### *Megadrill v. Brighouse*

[¶ 82] *Megadrill* makes that distinction. 556 S.W.3d at 497. There, the plaintiff alleged that Megadrill waived its right to object to personal jurisdiction because it "actively engag[ed] in litigation in Texas." *Id.* However, that court noted several times that the prior lawsuits plaintiff relied on to allege waiver were "in an unrelated matter" and "unrelated to the present one." *Id.*

[¶ 83] After reviewing cases from other jurisdictions, the court held that plaintiff "cites no authority supporting his position that a party's consent to jurisdiction in one case extends to other *unrelated lawsuits* in the same jurisdiction." *Id.* at 498 (emphasis added); *see also id.* (distinguishing *Interpole* and other cases finding waiver where "the affirmative lawsuit was based on the same transaction that was at issue in the subject litigation, or at least a related transaction").

[¶ 84] Thus, the court held that "as a matter of law that [Megadrill] did not consent to personal jurisdiction in the present action by previously filing a federal court lawsuit in Texas on an *unrelated matter*." *Id.* at 499 (emphasis added).

[¶ 85] Accordingly, Blackstone Defendants' reliance on *Megadrill* is misplaced because the First Action is related to the present action—it is essentially the same action.

### *Grynberg v. M-I L.L.C.*

[¶ 86] Finally, Blackstone Defendants' reliance on *Grynberg* is likewise misplaced. 398 S.W.3d at 878. Although *Gyrnberg* and a line of cases hold that appearing in matters "ancillary" and prior to the main suit does not waive a personal-jurisdiction challenge, the examples of "ancillary" matters the court cited are distinguishable: (i) filing a Rule 11 agreement; (ii) entering into an agreed collateral order; (iii) filing a mandamus petition and motion for emergency relief; (iv) filing a notice of oral hearing on the motion to dissolve writ of garnishment; (v) agreeing to extend temporary restraining and temporary injunction orders; (vi) counsel attending a temporary restraining order hearing; or (vii) engaging in discovery before the special-appearance hearing. *See id.* None of these examples resemble filing an answer in a virtually identical lawsuit.

## IV. Conclusion

[¶ 87] For these reasons, the court previously denied the Blackstone Defendants' special appearances on January 17, 2025.

_____
BILL WHITEHILL
Judge of the Texas Business Court,
First Division

SIGNED: February 10, 2025.

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 97175141
Filing Code Description: No Fee Documents
Filing Description: Memorandum Opinion and Order on Blackstone Defendants' Special Appearances
Status as of 2/10/2025 12:28 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Christopher W.Patton | | cpatton@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |
| Scott Smoot | | ssmoot@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |
| Stephen Shackelford | | sshackelford@susmangodfrey.com | 2/10/2025 11:49:30 AM | SENT |
| NATALIE STALLBOHM | | nstallbohm@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |
| M. TaylorLevesque | | taylor.levesque@troutman.com | 2/10/2025 11:49:30 AM | SENT |
| Sarah Hannigan | | shannigan@susmangodfrey.com | 2/10/2025 11:49:30 AM | SENT |
| Gary Vogt | | gvogt@kirkland.com | 2/10/2025 11:49:30 AM | SENT |
| Bryan Caforio | | bcaforio@susmangodfrey.com | 2/10/2025 11:49:30 AM | SENT |
| Michelle Williams | | mwilliams@susmangodfrey.com | 2/10/2025 11:49:30 AM | SENT |
| Kerri Jones | | kjones@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |
| Karyn Cooper | | karyn.cooper@kirkland.com | 2/10/2025 11:49:30 AM | ERROR |
| Gina Flores | | gflores@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |
| Roger BCowie | | Roger.Cowie@troutman.com | 2/10/2025 11:49:30 AM | SENT |
| Jeremy Fielding | | jeremy.fielding@kirkland.com | 2/10/2025 11:49:30 AM | SENT |
| Zack Ewing | | zack.ewing@kirkland.com | 2/10/2025 11:49:30 AM | SENT |
| Nicholas Perrone | | nicholas.perrone@kirkland.com | 2/10/2025 11:49:30 AM | SENT |
| Josephine Wang | | jwang@susmangodfrey.com | 2/10/2025 11:49:30 AM | SENT |
| Lindsey Godfrey Eccles | | leccles@susmangodfrey.com | 2/10/2025 11:49:30 AM | SENT |
| Michael Patton | | michael.patton@kirkland.com | 2/10/2025 11:49:30 AM | SENT |
| Laura QuinnBrigham | | laura.brigham@kirkland.com | 2/10/2025 11:49:30 AM | SENT |
| Christopher Schwegmann | | cschwegmann@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |
| Yaman Desai | | ydesai@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Envelope ID: 97175141
Filing Code Description: No Fee Documents
Filing Description: Memorandum Opinion and Order on Blackstone
Defendants' Special Appearances
Status as of 2/10/2025 12:28 PM CST

Case Contacts

| Yaman Desai | | ydesai@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |
|---|---|---|---|---|
| Kyle Gardner | | kgardner@lynnllp.com | 2/10/2025 11:49:30 AM | SENT |
| Louisa Karam | | louisa.karam@lockelord.com | 2/10/2025 11:49:30 AM | SENT |
| Theressa Washington | | Theressa.Washington@lockelord.com | 2/10/2025 11:49:30 AM | SENT |
| Business Court 1B | | BCDivision1B@txcourts.gov | 2/10/2025 11:49:30 AM | SENT |
| Griffin Vail | | griffin.vail@kirkland.com | 2/10/2025 11:49:30 AM | SENT |